IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | 25-MJ-649 (MJP) |
| -vs- | **UNITED STATES'** |
| | **POST-HEARING** |
| I-V SHASKA ZOREZ, a/k/a | **MEMORANDUM OF LAW** |
| HANS CHRISTIAN PEREZ, | |
| Defendant. | |

---

The United States of America, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, Charles E. Moynihan, Assistant United States Attorney, of counsel, does hereby make and file its memorandum of law in favor of granting the government's search warrant application.

## PROCEDURAL HISTORY

The defendant, I-V Shashka Zorez, a/k/a Hans Christian Perez, currently stands charged in a complaint with being an unlawful user of a controlled substance in possession of a firearm. The government has applied for a search warrant to examine a cellular telephone removed from the defendant at the time of her arrest. The defendant argues the Court should deny the application. The Court as requested briefing from the respective parties.

For those reasons stated below, the United States believes the defendant does not have the ability to challenge the issuance of the search warrant and the search warrant application

is supported by probable cause and asks the Court to authorize the search of the cellular telephone described in the application.

## FACTS

On November 4, 2025, at approximately 8:29:10 a.m. EST, RPD started receiving calls that an Asian male with a trench coat, face covering, and who was wearing ammunition, was standing on the corner of Park Avenue and South Goodman Street with an antique rifle. At approximately 8:33:21 a.m. EST, RPD received a call that the Asian male fired the weapon into the air. At approximately 8:35:28 a.m. EST, an RPD officer and a Monroe County Deputy Sherriff were first to respond to the scene. Law enforcement encountered a person they identified as I-V. I-V had the weapon slung around the shoulder with the bayonet affixed and had hands out in a surrendering posture. I-V was cooperative with responding officers and greeted them with, "Hello fellow comrades." After the arrest, I-V thanked the responding officers for "not being trigger happy." RPD inventoried and seized all of I-V's personal belongings, including the rifle and approximately eight (8) rounds of ammunition. Additionally, a spent shell casing was recovered from the ground in the vicinity of where I-V was taken into custody. Subsequent to being taken into custody, I-V was transferred by RPD to Strong Memorial Hospital where she was placed under a Mental Health Arrest (MHA). When taken into custody by RPD, I-V had on her person an Apple iPhone Model A1661. The cellular telephone was inventoried and secured by RPD as evidence.

The defendant was charged by complaint with violating 18 U.S.C. § 922(g)(8) (unlawful user of a controlled substance in possession of a firearm). That charge remains pending.

## ISSUES PRESENTED

I. Whether the defendant has the ability to challenge the issuance of the search warrant.

II. Whether the government's search warrant application is supported by probable cause.

**I.   The Fourth Amendment does not permit the defense to challenge a search warrant prior to issuance and execution.**

**A.   Legal Standard**

The government does not believe the defendant can challenge the issuance of the search warrant. "The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant," but instead "by interposing, ex ante, the deliberate, impartial judgment of a judicial officer ... between the citizen and the police" and then "providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages." United States v. Grubbs, 547 U.S. 90, 99 (2006). Fourth Amendment challenges are limited to "two discrete, post-enforcement settings: (1) a motion to suppress in a criminal case or (2) a damages claim under [civil actions]". Warshak v. United States, 532 F.3d 521, 528 (6th Cir. 2008) (explaining that "a pre-enforcement challenge" to future searches provides no factual context and noting that the "Fourth Amendment is

designed to account for an unpredictable and limitless range of factual circumstances, and accordingly it generally should be applied after those circumstances unfold, not before").

Courts distinguish between search warrants and subpoenas for purposes of determining what type of challenge is permissible. Subpoenas may be challenged before compliance, while, "[i]n stark contrast, a search warrant is properly challenged after it is executed." In re Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc., 802 F.3d 516, 527, n.39 (3d Cir. 2015).

Federal Rule of Criminal Procedure 41, which governs search warrants, "only allows for a motion to suppress evidence." United States v. Crumpton, 2023 WL 3611554, at *2 (M.D. Ga. May 23, 2023) (citing Fed. R. Crim. P. 41(h)) and pointing out, in an order denying a motion to quash an already-issued DNA warrant, that "numerous courts have concluded that individuals do not have standing to challenge a warrant before it is executed"). Cf. Carpenter v. United States, 585 U.S. 296, 138 S. Ct. 2206, 2228, 201 L.Ed.2d 507 (2018) (Kennedy, J., dissenting) ("recognizing the differences between subpoenas and search warrants, including that a subpoena provides 'the recipient the opportunity to present objections before complying,' which is why subpoenas 'need not comply with the procedures applicable to warrants' ")).

B.  Argument

Here, the Magistrate Court has not authorized the search warrant. The search warrant has not been executed by law enforcement. Because the Fourth Amendment is concerned with unlawful seizure of evidence and no evidence has been seized from the cellular device, any motion brought by the defense challenging the search warrant is premature.

II. **The government's search warrant application establishes probable cause that cellular device contains evidence of criminal activity and establishes a sufficient nexus between the cellular device and the criminal activity.**

A.  Legal Standard

As to whether a search warrant application requesting authorization to search an electronic device is supported by probable cause is found in the Second Circuit's decision in United States v. Silva, --- F.4th---, 2025 WL 2078339 (2d Cir. 2025). The Second Circuit in United States v. Silva, recently considered among other questions whether law enforcement had established probable cause to support a search warrant for a cellular telephone seized from a defendant who had been charged with various offenses, including firearms offenses. That Court stated, 'An officer's affidavit in support of a warrant must "establish[ ] a sufficient nexus between the criminal activities alleged and [the place to be searched]." United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004). 'Importantly, "[a] showing of

nexus does not require direct evidence and may be based on [a] reasonable inference from the facts presented based on common sense and experience." Id. (internal quotation marks and citation omitted).' Silva, 2025 WL 2078339 at *4.

> The Second Circuit went on to say:
>
>> Probable cause thus poses no "high bar." Wesby, 583 U.S. at 57, 138 S.Ct. 577 (citation omitted). At the warrant-application stage, the government need not prove its case. See Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place" in a probable-cause determination.); accord United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993). A judicial officer need "simply ... make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place" under a "totality-of-the-circumstances analysis." Gates, 462 U.S. at 238, 103 S.Ct. 2317; see also Walczyk, 496 F.3d at 156 ("In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (internal quotation marks and citation omitted)); accord *190 Florida v. Harris, 568 U.S. 237, 244, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013).
>
> Silva, 2025 WL 2078339 at *4.

This standard does not require the affidavit establish probable cause to believe the device sought to be searched was used in furtherance of criminal activity. Rather, the probable cause determination rests on whether the location to be searched contains evidence of the criminal activity. Silva, 2025 WL 2078339 at *4. Further, "a law-enforcement affiant's claim to expertise may support a probable-cause determination where it is combined

with enough other specific, factual allegations that tend to link the alleged criminal conduct to the place to be searched." Silva, 2025 WL 2078339 at *4.

Other courts have added further insight. See United States v. Amilcar, 2025 WL 2452415 at *13 (E.D.N.Y. Aug. 25, 2025) (finding reasonable an issuing magistrate's determination that there is a fair probability that a cellular device, which was seized from a defendant at the time of arrest, would contain evidence of the crime); See also United States v. Chowdhury, 2025 WL 2987917 at *8 (E.D.N.Y. Oct. 22, 2025) ('Probable cause to search a suspect's electronic device further requires the government to show some specific "nexus between the alleged crimes and the [device] to be searched." United States v. Silva, 146 F.4th 183, 190 (2d Cir. 2025). However, that "nexus" can be "based upon a reasonable inference from the facts presented," as well as "an officer's experience" and "common sense." Id. (internal quotation marks omitted)'); see also United States v. Rinsch, ---F.Supp.3d---, 2025 WL 2972226 at *2 (S.D.N.Y. Oct., 22, 2025) ('training and experience can only support a probable cause determination when combined with other specific, factual allegations that link the alleged criminal conduct to the place to be searched, see United States v. Silva, 146 F.4th 183, 189–90 (2d Cir. 2025).').

Determining what presents a sufficient nexus between the criminal activity and the cellular device to be searched appears to rest on each case's individual facts. In United States v. King, 2022 WL 875383 (S.D.N.Y. Mar. 24, 2022), the Southern District of New York concluded an issuing magistrate was provided sufficient information to conclude there was

probable cause to search a cellular device seized in connection with a defendant's arrest in connection with possessing a firearm. In this case, the reviewing court determined the totality of the circumstances presented probable cause. The affiant presented information in the affidavit which detailed facts of the investigation, including video imagery of the defendant holding the cellular device minutes before the shooting. The affiant also presented information based on training and experience "cellphones contain records of the cellphone's location, and therefore the Phone would likely contain records of Defendant's locations during and after the shooting. "This, by itself, is sufficient to create probable cause to search the Phone." King, 2022 WL 875383 at *4.

Likewise, a search warrant permitting the search of a device found at the scene of a home invasion was supported by probable cause because, "the fact that [law enforcement] discovered the phone at the scene of the crime creates a sufficient factual nexus to justify the search" notwithstanding the fact that the affiant did not allege information that the cell phone was used in the crime. United States v. Robinson, 2018 WL 5928120 at *16 (E.D.N.Y. Nov. 13, 2018); see also United States v. Harvey, 2022 WL 684050 at *8 (E.D.N.Y. Mar. 8, 2022) ("the fact that [the defendant] was recorded using a cellphone moments after the March 15, 2021, attempted robbery and shooting establishes the evidentiary nexus between his cellphone and criminal activity" sufficient to support finding of probable cause.).

**B.    Argument**

As to the current search warrant application, the government believes the search warrant application establishes a sufficient nexus between the criminal activities alleged and the cellular device seized from the defendant.  The affidavit establishes probable cause to believe the defendant, an unlawful user of marijuana, possessed the rifle charged in the complaint.  The affidavit also says the cell phone was seized from the defendant when the defendant was arrested with the rifle charged.  The affidavit also conveys that the investigation has shown the rifle was purchased through the use of the internet and that the defendant admitted to this.  The affidavit also shows that the defendant admitted to frequently accessing social media websites.  The affidavit also references the affiant's training and experience in concluding that people who illegally possess firearms often possess evidence of their criminal activity on cellular devices.   Based on the totality of the circumstances, the government believes this information establishes that a fair probability exists that contraband or evidence of a crime will be found on the defendant's cellular device.

**CONCLUSION**

For the foregoing reasons, the government believes the search of the cellular device should be authorized as made in the application.

Dated:   Rochester, New York, December 12, 2025

                                 MICHAEL DiGIACOMO
                                 United States Attorney

               By:   *s/Charles E. Moynihan*
                                 CHARLES E. MOYNIHAN
                                 Assistant United States Attorney
                                 United States Attorney's Office
                                 Western District of New York
                                 100 State Street, Suite 500
                                 Rochester, New York   14614
                                 (585) 399-3971
                                 Charles.Moynihan@usdoj.gov

To: Jeffrey Ciccone, Esq.